Good morning, and may it please the Court, my name is Jemaisa Drake and I represent the appellant Mr. Bayon. With the Court's permission, I would ask for three minutes for rebuttal. Yes. Thank you. Please proceed. We know from Alonis that to sustain a conviction, the government was required to prove that Mr. Bayon intended his messages to the Congress people to be threatening. The government has accepted this burden. That's not an issue in this case, and the jurors were accordingly properly instructed, quote, the defendant must have made the statement intending it to be a threat or with knowledge that this statement will be viewed as a threat. As the pre-trial proceedings suggest, during the first half of the trial suggests, there was a real possibility that the jurors in this case could have surmised that Mr. Bayon was frustrated and lacking the ability to moderate himself. The jurors easily could have decided that when he left the messages, he was having a very, very bad lapse in judgment, and that the messages reflected his inability to appropriately convey his thoughts and not his intention to actually threaten. The government, in fact, acknowledges that Mr. Bayon's intent was the central issue in the case. That's exactly what puzzles me. If the jury could have reached that conclusion that he didn't mean to actually threaten anyone, isn't it relevant that he had gathered together the means to actually carry out the kind of thing that he was threatening? Well, a few points, Your Honor. His ability to carry through with the threat was not an element of the offense. I didn't say it was an element of the offense. The government doesn't have to prove that he was able to carry out the threat. But the whole argument on behalf of the defendant was, this is just a guy blowing off steam. He didn't mean any harm by saying these things. And meanwhile, he's got an arsenal and a set of manuals for how to use it to commit acts of terrorism. You're not relevant to the jury's decision on his defense that he was probably just blowing off steam. Well, I would put a finer point on it. It's not relevant because it's probative value. You know, in order to be relevant, it has to be probative. It's probative value, certainly not all 19 titles, doesn't target the inference that the government was wanting it to, except through this impermissible propensity inference. Suppose he had Googled those things in the days before placing the call. You would concede that would be admissible then, right? Yes, I think that would be a much closer case. The make of the fact that someone is in possession of books, I would imagine... They also had the storage unit, right? They had the storage unit where he had aluminum powder, which matches one of the books. So it's not, the books weren't divorced from any other proof in the case. They were connected to, I don't even think you're challenging the ability of the storage unit materials to come in. Correct. That's right. But the materials in the storage unit are materially different than the books. What's the difference between having the aluminum powder and having a book that tells you how to use aluminum powder to make a bomb? Well, in this case, he did not have access to the aluminum powder and he claimed that it was actually paint. I mean, if you look at the... So that can come in because you have an argument that he really didn't care much about the aluminum powder, but the book that shows that he had a great interest in aluminum powder can't come in. So we make two arguments. There's 19 titles. Our primary argument is that all of them are inadmissible. Our fallback argument is, even if the books about the aluminum powder pigment are admissible, the remainder of the books are not. So the book titles cover... And for this, we rely primarily on the Parr case, out of the Seventh Circuit. This is the book that talks about that anarchist's cookbook. The books cover a wide array of titles that have absolutely nothing even to do with the government's entirely speculative theory that he would carry through on these threats. Yeah, but isn't your problem that the more remote and irrelevant the books are, the less prejudicial they are? I mean, to the extent that if the jury is seeing a book about making a bomb out of aluminum powder, possessed by a man who is making threats to members of Congress, and that comes in, that the jury is going to be deeply prejudiced because he also had one about hacking? Well, there can be no harmlessness argument here. I mean, these books, all 19 titles were emphasized in closing arguments. The government encouraged the jurors, specifically, to use the books to infer subjective intent. So if the books, or the majority of the books, were admitted erroneously, then the government's harmlessness argument has to fail, given the nature of their closing argument. Can I ask a question? Your brief strongly relies on a 404B analysis. At trial, when you look at the record, it seemed like a lot of the focus was just sort of a standard relevance 403 assessment. And I'm wondering, which is the proper way to analyze this evidence? I mean, if I had a case in which, if I was considering a case in which someone has a book about how to make meth in his home, and at the same time, he is arrested in a warehouse making meth, I'm not sure I would conceive of the book as another act, as opposed to part of the same. So why is 404B the proper way to think about this? It can be 404B or 403. They both lead, in our minds, to the same conclusion, which is, that this is evidence that is of only marginally probative value. It's the exact same place, and it makes no difference whether you call this other act evidence or not. Well, it gets to the same place in the sense that the conclusion we're asking this court to reach is that it's inadmissible under either theory. Do you think it's stronger under 404B or just the same? I think it's probably stronger under 403, but if I may finish the thought. But certainly, if you look at it under 404B, we know that evidence of general criminal activity, of propensity towards criminal activity, is not admissible, that's A. B, unless it satisfies the sort of chain of things like motive, opportunity, preparation, etc. All of those were taken completely out of the equation by virtue of the fact that Thank you. We'll hear from the United States. Good morning. May it please the Court. Catherine Gregory, Assistant U.S. Attorney representing the United States in this matter. This Court should affirm the judgment because the District Court acted well within its discretion when it allowed the introduction of those books that were found in Mr. Bayon's apartment. The only element, as Mr. Bayon notes on appeal here, that was truly When viewed in light of the handwritten notes, the base components for homemade explosives that were in his possession, this all went straight to the heart of the intent issue. The government used the books carefully. No one read portions of the books aloud during trial. There were no propensity arguments, and importantly, the books were not just sent back with the jury wholesale, and I don't believe that the jury even requested to see them during their deliberations. Apart from why it may have been harmless, but why would the books about judgment, you know, the book about hacking a new ID, how to create foolproof new identity? Why would those come in? If we look at the threats themselves, the recordings in which he says anytime, anywhere, he deliberately left it almost frighteningly vague in that in that particular sense, anytime, anywhere. So the fact that he has these kinds of things that would allow him to come to follow through on his threat anytime, anywhere, were certainly relevant. Now, the weight that the jury would have assigned each particular book was up to the jury, and defense counsel did cross on, you know, do we know when these were purchased? Do we know if he'd read them recently? Why wasn't there a limiting instruction given if it was 404B? I think a good argument can be made that was 404B on intent. Why was there no instruction the jury to tell them they shouldn't look at this as propensity, but only on the issue of intent? It wasn't admitted under 404B. I don't believe 404B notice was even given in this case, and I don't think that the defendant actually cited 404B as the reason for his objection below. He specifically cited 403. But there was no request for limiting, whether it was under 404B or not, there was no request for any limiting instruction, in other words. I don't believe so, no. There was the objection made, the objection was renewed, I believe, as the books were coming in, and each time the district court made that probative value versus prejudicial effect evaluation and determined that on reflection, even though the district court recognized there could be some prejudicial value to the books, on balance, the probative value outweighed that. And even if it abused its discretion here in of the books, the evidence of guilt in this case was truly overwhelming. I mean, just the recordings themselves on their own, and we have the recordings, if the panel would like to hear them, the tone of his voice, the fact that the messages were almost verbatim the same, shows that they were clearly scripted. They were designed to instill fear with biblical messages, eye for an eye, tooth for a tooth, and he noted in his own opening statement that he included that that's right on appendix page 65. He also said in his opening statement that you have to make threats according to your position in life and explained that's why he did it. And that's before we even get to the physical evidence that was found, for example, in the storage locker. The multiple cans, the two cans of Crest Light aluminum powder, five gallons of methanol, dozens of rounds of ammunition, and I actually would note that Mr. Bayan kind of argues that there were no corresponding shotguns for those shells, but that's actually quite significant. Special Agent Wilson testified that the component parts of a shotgun shell include gunpowder, which the new and improved C4 book in Mr. Bayan's possession described as a base component for homemade explosives. So the government made the argument about the books in light of all of this evidence, the recordings, the methanol, the aluminum powder, the shotgun shells, the ammunition, and it was part of this larger picture. So even if the district court abused its broad discretion, the error was clearly harmless. And unless the panel has any other questions, we would rest on our brief. Thank you. We'll hear rebuttal. Thank you, Your Honors. Just fairly quickly, on the point of whether or not a 404B argument was made, I produced the argument that was made by trial counsel against the admission of the books. He says it goes more to a showing that the defendant has a propensity to commit crime. Later, when they were talking about specific titles, he says, again, by he, I mean defense counsel, to me those things just seem like they're the kinds of things that are designed to more establish propensity than going to what we were talking about here. I believe that that is sufficient to preserve the 404B. Whether it's what was on the 404B or 403, there was no request by counsel, Mr. Bayan, for limiting instruction, right? That's correct. That's correct. To the point about statements that Mr. Bayan may have made in opening statements or at various portions throughout the trial to suggest an admission that he intended these things to be threatening. Of course, he preceded pro se here, but the thing he consistently argued and attempted to make clear to the jurors is that he left these messages out of his frustration with what he believed was the Trump administration's policy of separating women and children at the border, and that he left these messages as a way to prompt the politician to reevaluate that policy. He, as the government correctly contends, put in issue because he was disavowing leaving these statements with a threatening purpose, whether the statements were truly threatening. Then just briefly and finally, the notion that because the language he used in his threat, this anytime, anywhere, was so vague, therefore the government gets to, as I understand its argument, introduce all manner of evidence that indicates any type of criminality is, I would submit, precisely the imprecision that 404B and 403 are designed to guard against. Unless the court has other questions, thank you very much. Thank you both. We'll take the matter under advisement. Nicely done.